IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DEANTHONY HART, #498392, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:25-cv-00905 |
| | ) | |
| JIMMY BAUGUS, et al., | ) | JUDGE RICHARDSON |
| | ) | |
| Defendants. | ) | |

## <u>**MEMORANDUM OPINION AND ORDER**</u>

Pro se plaintiff Deanthony Hart, a state inmate in custody at the Turney Center Industrial

Complex (TCIX), filed a civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1), a Motion for

Leave to Proceed In Forma Pauperis (IFP) and attached Declaration (Doc. Nos. 2, 3), and a Motion

for Appointment of Counsel. (Doc. No. 4.)

This case is before the Court for ruling on Plaintiff's Motions and for initial review under

the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

### I. PAUPER STATUS

Subject to certain statutory requirements, *see* 28 U.S.C. § 1915(a)(1)–(2), (g), a prisoner

bringing a civil action may be permitted to proceed as a pauper, without prepaying the $405 filing

fee. Because Plaintiff's IFP Motion and Declaration complies with the applicable statutory

requirements and demonstrates that he lacks the funds to pay the entire filing fee, the IFP Motion

(Doc. No. 2) is **GRANTED**.

Nevertheless, prisoners bringing civil lawsuits or appeals are "required to pay the full

amount of a filing fee." 28 U.S.C. § 1915(b)(1). Where the prisoner proceeds IFP, the fee is $350

instead of $405, *see id.* § 1914(a)–(b) & Dist. Ct. Misc. Fee Schedule, provision 14 (eff. Dec. 1, 2023), and may be paid in installments over time via an assessment against his inmate trust account. 28 U.S.C. § 1915(b)(1)–(2).

Accordingly, Plaintiff is **ASSESSED** a $350 filing fee. The fee will be collected in installments as described below.

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the

Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A viable claim is stated under 42 U.S.C. § 1983 if the Complaint plausibly alleges (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. *Inner City*, *supra*.

**B. Factual Allegations**

Plaintiff alleges that he filed a PREA complaint[1] against Officer Bledsoe on April 24, 2025, due to Bledsoe's two-day history of urinating in front of Plaintiff and his fellow inmates while they were working outside at their prison jobs. (Doc. No. 1 at 4.) Bledsoe had exposed

---

[1] "PREA" is an acronym for the Prison Rape Elimination Act of 2003, 34 U.S.C. § 30301 *et seq.*

himself to urinate in front of the inmates no fewer than eight times during the two days, despite having a portable restroom available nearby. (*Id.*) Because this was done "repeatedly and without warning, directly in front of [Plaintiff] and other inmates," Plaintiff felt that there was "sexual intent" behind Bledsoe's actions. (*Id.*)

On April 25, 2025, Plaintiff went to report the matter to Sgt. Gatlin, explaining that he felt unsafe working around Bledsoe. (*Id.*) Gatlin said that he would talk to Bledsoe, and he removed Plaintiff from that day's "work list." (*Id.* at 4–5.) Later that day, Officer Baugus and Sgt. Brown interviewed Plaintiff concerning his report to Sgt. Gatlin; they told Plaintiff that the complaint he had made by calling the PREA hotline on April 24 did not contain enough information. (*Id.* at 5.) Baugus took Plaintiff's statement, and after he stopped the recording, he asked whether Plaintiff would drop the complaint if Baugus got him a different job. (*Id.*) Plaintiff declined. (*Id.*) Baugus then spoke privately with Bledsoe, and Plaintiff did not hear anything else about the matter until April 29.

On April 29, while Plaintiff was undressed and sitting on the toilet in the communal restroom, Officer Houldsworth entered the restroom. Because Houldsworth is female, Plaintiff became upset and told her that "she couldn't be here while [he] was using the restroom." (*Id.*) Houldsworth loudly informed Plaintiff that she "could go anywhere she wants to." (*Id.*) Plaintiff pleaded with her that he was naked and should be allowed to get dressed, but Houldsworth "continued to look at [Plaintiff] and berate [him] for nearly a full minute" while he was undressed. (*Id.* at 6.) Afterward, Plaintiff made a complaint against Houldsworth via the PREA hotline. (*Id.*)

Shortly after the episode with Houldsworth, Sgt. Gatlin informed Plaintiff that he would be "written up for disrespect." (*Id.*) Later that day, Plaintiff encountered Baugus, the PREA coordinator, who ordered him to "[g]et on the wall," handcuffed him, and walked him to

segregation. (*Id.*) When Plaintiff asked why he was being sent to segregation, Baugus said, "You're not going to talk to our women like that." (*Id.*) However, when Plaintiff received his disciplinary write-up, it was not for disrespect but for violation of state law: "[t]he face of the write-up assert[ed] that [he] filed a false report to the PREA coordinator." (*Id.* at 6, 8.) Baugus informed him that his two PREA complaints had been found unsubstantiated but refused to give him a copy of the PREA dispositions. (*Id.*) Plaintiff was in segregation for two days prior to having his disciplinary hearing and for six days following that hearing. (*Id.* at 7.)

At the disciplinary hearing, hearing officer Cody Brown (a different person than his co-Defendant, Sgt. Brown) refused Plaintiff's requests for witnesses, stating that "they had something to do with the first incident." (*Id.*) When Plaintiff appealed his disciplinary conviction to Warden Taurean James, Warden James responded by stating that Plaintiff "made two claims of PREA against staff while they were operating in the scope of their duties; actions made by staff were not directed at you or not substance [sic] of PREA." (Doc. No. 1-2 at 2; Doc. No. 1 at 7.) On May 12, 2025, Plaintiff filed a grievance claiming that he was retaliated against for filing a PREA complaint, but his grievance was denied by Defendant Michael Wood, who supervised Baugus and stated in response to the grievance that "Baugus does not retaliate and that he stands behind Baugus on this issue." (Doc. No. 1 at 7; *see* Doc. No. 1-2 at 17.)

As a result of the disciplinary proceedings against him, Plaintiff "[l]ost two months of good time, was moved from an annex[,] a part of the prison that is both safer and offers more privileges, to the most dangerous unit on the prison compound, a[ss]essed a five [d]ollar [fine], was moved from a prison job making 32 cents to a job making 17 cents and [is] no longer eligible for higher pay jobs." (*Id.* at 8.) He also required mental health treatment. (*Id.*) Plaintiff sues Baugus, Cody Brown, Bledsoe, Houldsworth, Wood, Sgt. Brown, and Warden James. (*Id.* at 1, 3.) As relief,

Plaintiff asks for money damages and for injunctive relief including the restoration of his "good time that was taken from [him] in retaliation for [his] exercise of [his] First Amendment rights." (*Id.* at 9–12, 10.)

**C. Analysis**

The Complaint asserts a claim of First Amendment retaliation. This claim is expressed in Plaintiff's assertion that he "was written up for the exercise of [his] first amendment right to petition the government for redress of [his] grievances." (Doc. No. 1 at 8 ¶ 53; *see also id.* at 4 ¶ 1, 10 ¶ F.) To plausibly claim retaliation in violation of the First Amendment, Plaintiff must allege "that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct.'" *Hill*, 630 F.3d at 472 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)).

1. <u>Protected conduct</u>

The pursuit of a prison grievance—including, presumably, a complaint under PREA—is protected conduct so long as the grievance is not frivolous. *Gennoe v. Washburn*, No. 3:19-cv-00478, 2019 WL 5693929, at *6 (M.D. Tenn. Nov. 4, 2019) (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)); *see Treadwell v. King*, No. 2:20-CV-10280, 2020 WL 815589, at *2 (E.D. Mich. Feb. 19, 2020) (finding nonfrivolous PREA filing to be protected conduct). Here, Plaintiff attached to his Complaint the documentation from his disciplinary proceedings, which confirms that he was convicted (in those disciplinary proceedings) of violating state law by filing a false report under PREA. (Doc. No. 1-2 at 1–2, 6, 16–17.) However, viewing the Complaint in the light most favorable to Plaintiff, the Court cannot find Plaintiff's PREA hotline complaint against Houldsworth (which, if it was reduced to writing, is not included in the record of this case)

to be frivolous based solely upon its dismissal as such by TCIX officials. *See Maben v. Thelen*, 887 F.3d 252, 263 (6th Cir. 2018) (prison disciplinary finding of "'guilt of misconduct' did not negate an allegation of protected conduct" or stand in the way of establishing connection between protected conduct and adverse action) (quoting *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007)); *see also EPLET, LLC v. DTE Pontiac N., LLC*, 984 F.3d 493, 501 (6th Cir. 2021) (even if a reasonable inference could otherwise be drawn in favor of defendant, such an inference cannot be drawn at the motion-to-dismiss stage, where all reasonable inferences must be drawn in plaintiff's favor); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) ("Prison officials cannot properly bring a disciplinary action against a prisoner for filing a grievance that is determined by those officials to be without merit anymore than they can properly bring a disciplinary action against a prisoner for filing a lawsuit that is judicially determined to be without merit."). At this early stage, for purposes of initial review only, the Court finds that Plaintiff engaged in protected conduct when he complained of sexual harassment under PREA.

      2. <u>Adverse action and its relationship to protected conduct</u>

For purposes of initial review, the Court finds that being charged with and punished for filing an unfounded PREA report constitutes an action sufficiently adverse to support Plaintiff's retaliation claim. Plaintiff was charged and convicted (in disciplinary proceedings) under "State Law TCA Code 39-16-502 False Reports" (Doc. No. 1-2 at 4), a statute that makes it a felony to "[i]nitiate a report or statement to a law enforcement officer concerning an offense or incident within the officer's concern," knowing that the matter reported either "did not occur" or is based on false or no information. Tenn. Code Ann. § 39-16-502(a)(1). As a result, he lost substantial good time credits and earnings from his prison job. A "person of ordinary firmness" would be deterred by these actions from persisting in filing PREA complaints. *See Hailey v. Blackman*, No.

18-1808, 2019 WL 3247160, at *2 (6th Cir. Jan. 31, 2019) ("[W]e have recognized that an action that adversely affects a prisoner's release date, such as the loss of good-time credits, is sufficient to deter a prisoner of ordinary firmness from exercising his right to file grievances.") (citing *Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002)).

Regarding the final retaliation element of "causal connection" between protected conduct and adverse action, *Maben*, 887 F.3d at 262, the disciplinary charge against Plaintiff was explicitly motivated by his protected PREA complaint against Houldsworth.

Plaintiff therefore sufficiently alleges a nonfrivolous retaliation claim which will be allowed to proceed against Defendants Baugus, Cody Brown, and Warden James. He does not, however, allege facts to suggest that any other Defendant was involved in the adverse action allegedly taken against him for engaging in protected conduct. Accordingly, Defendants Bledsoe, Houldsworth, Wood,[2] and Sgt. Brown will be dismissed from the action.

One final note: Plaintiff cannot recover the good time credits he lost as disciplinary punishment in this civil rights action. "A prisoner cannot, in a § 1983 action, challenge the fact or duration of his confinement or recover good-time credits lost in a prison disciplinary proceeding." *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973)). Instead, "habeas corpus would . . . [be the] appropriate remedy" for any unconstitutional deprivation of such credits. *Preiser*, 411 U.S. at 487. Plaintiff's other requests for relief remain potentially viable.

---

[2] According to the Complaint and its attachments, Defendant Wood denied Plaintiff's grievance claiming retaliation; he is not alleged to have been involved in the disciplinary proceedings related to Plaintiff's PREA filings. Assuming that Plaintiff's grievance filing in the wake of his disciplinary conviction was protected conduct, Wood's "mere denial or rejection of [that] grievance does not amount to adverse action." *Branch v. Houtz*, No. 1:16-CV-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 25, 2016), *aff'd*, No. 16-1364 (6th Cir. Sept. 1, 2016).

### III. CONCLUSION

As explained above, the Complaint in this case will be allowed to proceed against Defendants Jimmy Baugus, Cody Brown, and Warden Taurean James.[3] Defendants Bledsoe, Houldsworth, Wood, and Sgt. Brown are **DISMISSED** from this action.

With the case still in the pleading stage, Plaintiff's Motion for Appointment of Counsel (Doc. No. 4) is **DENIED** as premature, without prejudice to renewal at a later date after service of process is accomplished.

The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for each of Defendants Baugus, Brown, and James. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **30 DAYS** of this Order's entry on the docket. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packets, the Clerk is **DIRECTED** to issue summons to the U.S. Marshals Service for service on the defendants. Fed. R. Civ. P. 4(b) and (c)(3).

This action is **REFERRED** to the Magistrate Judge to oversee service of process, to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[3] The Court's determination that the Complaint states a colorable claim for purposes of this initial screening does not preclude any Defendant from filing a motion to dismiss under Federal Rule of Civil Procedure 12.